UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| SHIRLEY M. SMITH,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL J. ASTRUE,<br>**Commissioner of the Social<br>Security Administration,**<br><br>        Defendant. | Case No. EDCV 07-01129 AJW<br><br>**MEMORANDUM OF DECISION** |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed her benefits application on April 19, 2005. She alleged that she had been disabled since December 15, 2002 due to a collapsed lung, diabetes, high blood pressure, liver disease, hepatitis C, and psychiatric problems. [JS 2; Administrative Record ("AR") 23, 35, 100]. In a written hearing decision that constitutes the final decision of the Commissioner, an administrative law judge ("ALJ") found that

plaintiff had severe impairments consisting of a respiratory impairment from ruptured blebs[1] surgically repaired, non-insulin dependent diabetes mellitus, hypertension, and hepatitis C, but that she was not disabled because she retained the residual functional capacity ("RFC") to perform her past relevant work as a retail clerk/cashier. [See JS 2; Administrative Record ("AR") 27-28].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Severity determination**

Plaintiff contends that the ALJ erred in not using the psychiatric review technique formula to evaluate whether plaintiff had a severe mental impairment and in finding that plaintiff did not have a severe, medically determinable mental impairment.

At step two of the five-step sequential evaluation procedure, the Commissioner must determine whether the claimant has a severe, medically determinable impairment or combination of impairments. See Smolen v. Chater, 80 F.3d 1273, 1289-1290 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987)). A medically determinable mental impairment is one that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory

---

[1] A bleb is "[a]n acquired lung cysts, usually less than 1 cm in diameter. . . ." Stedman's Medical Dictionary bleb (27th ed. 2000).

diagnostic techniques," and it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908; see 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). A medically determinable impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2006) (quoting Smolen, 80 F.3d at 1290).

To assess severity, the ALJ must determine whether a claimant's impairment or combination of impairments significantly limits his or her physical or mental ability to do "basic work activities." 20 C.F.R. §§ 404.1521 (a), 416.921(a); see Webb, 433 F.3d at 686. Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, speaking, understanding, carrying out, and remembering simple instructions; (3) the use of judgment; and (4) the ability to respond appropriately to supervision, co-workers, and usual work situations. 20 C.F.R. §§ 404.1521(b), 416.921(b). The ALJ is required to consider the claimant's subjective symptoms in making a severity determination, provided that the claimant "first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s)." SSR 96-3p, at *3.

If the ALJ "is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end" at step two. Webb, 433 F.3d at 687 (quoting SSR 85-28); see McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3rd Cir. 2004)("The burden placed on an applicant at step two is not an exacting one. . . . Any doubt as to whether this showing has been made is to be resolved in favor of the applicant.").

The ALJ found that plaintiff had no severe mental impairment that lasted or was expected to last for a continuous twelve-month period. [AR 27]. He noted that plaintiff had been treated by the San Bernardino County Department of Behavioral Health ("County Behavioral Health") for "self-reported symptoms of depression, short-term memory deficits, and difficulty concentrating," but he concluded that her mental status examination did not reveal memory deficits or problems with thought processes, she often did not

1  keep appointments and did not fully comply with her prescribed medications, and her mental records and
2  testimony did not establish any severe mental functional restrictions. The ALJ dismissed a mental
3  assessment form completed by Dr. Payne, plaintiff's treating psychiatrist at County Behavioral Health, as
4  "egregiously accommodative and grossly exaggerated" and "typical of similar forms often seen from
5  [County Behavioral Health] psychiatrists." [AR 27-28]. Dr. Payne's assessment indicated that plaintiff had
6  a diagnosis of major depression, recurrent, severe, with psychotic features, and numerous marked and
7  extreme mental functional limitations. [AR 432-435]. The ALJ found that Dr. Payne's "hyperbolic"
8  assessment was "completely unsupported by the mental health records or even subjective complaints," and
9  he wondered why Dr. Payne had not "hospitalized the claimant or suggested a guardian for her" if her
10 limitations were as pronounced as Dr. Payne indicated. [AR 28]. The ALJ deemed Dr. Payne's assessment's
11 "so exaggerated as to have no persuasive value." [AR 28].

12       The ALJ also concluded that plaintiff's testimony warranted no contrary conclusion because plaintiff
13 was "let go" from her last job as a retail cashier and collected unemployment benefits requiring "repeated
14 certification" of her readiness and ability to work. He noted that plaintiff testified that "she is depressed but
15 doing better with medications," and added that plaintiff's daily activities, which included driving and doing
16 some cooking and cleaning, were not probative of disability. [AR 28].

17       **Psychiatric review technique formula**

18       Plaintiff contends that the ALJ's severity finding is defective because the ALJ did not use the
19 psychiatric review technique described in the Commissioner's regulations.

20       The regulations state that "when we evaluate the severity of mental impairments for adults . . . we
21 must follow a special technique," also referred to as the psychiatric review technique. See 20 C.F.R. §§
22 404.1520a, 416.920a; Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4. Using the psychiatric
23 review technique helps

24     (1) Identify the need for additional evidence to determine impairment severity; (2) Consider
25     and evaluate functional consequences of the mental disorder(s) relevant to your ability to
26     work; and (3) Organize and present our findings in a clear, concise, and consistent manner.
27 20 C.F.R. §§ 404.1520a(a)(1)-(3), 416.920a(a)(1)-(3).
28       The psychiatric review technique requires adjudicators to evaluate and document a claimant's

4

symptoms, signs, and laboratory findings to determine whether one or more medically determinable mental impairments exists. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Using a defined ratings scale, the adjudicator then rates the degree of functional limitation resulting from the impairment(s) in four "broad functional areas": activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); see SSR 96-8p, 1996 WL 374184, at *4. The regulations specifically state that "after we rate the degree of functional limitation resulting from [the claimant's] impairment(s), we will determine the severity of [the claimant's] mental impairments. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). Generally, if the claimant's degree of limitation in the first three functional areas is "none" or "mild" and is "none" in the fourth area, a finding of no severe mental impairment will be made. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

> An ALJ's written hearing decision **must incorporate the pertinent findings and conclusions based on the technique**. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). **The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.**

20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2) (emphasis added).

The ALJ found that plaintiff did not have any severe restrictions in any functional area [AR 27], but he did not make specific findings for each functional area using the rating scale defined in the regulations, supported by references to plaintiff's symptoms and signs, before making his severity finding. That procedural error was not harmless because if the ALJ had correctly performed the psychiatric review technique, he would not have ended the evaluation of plaintiff's mental impairment at step two.

**Severe mental impairment**

Plaintiff contends that substantial evidence does not support the ALJ's finding that plaintiff had no severe mental impairment, either singly or in combination with her severe physical impairments. Specifically, plaintiff argues that the ALJ did not properly evaluate her psychiatric treatment records from County Behavioral Health.

1    Plaintiff first sought treatment at County Behavioral Health in November 2005. She was initially
2 evaluated by Patricia Prendergast, Ph.D.[AR 467-472]. Then a 49 year-old widow living with her uncle and
3 cousin, plaintiff reported a history of treatment for depression since the age of 14. She described symptoms
4 of feeling sad, difficulty getting out of bed in the morning, significant weight gain, insomnia, psychomotor
5 retardation, fatigue, diminished concentration and short-term memory, feelings of worthlessness, and
6 anxiety. [AR 467-471]. Plaintiff told Dr. Prendergast that her depression was exacerbated by having had
7 to relocate to California in September 2005 after she was evacuated from Louisiana to Mississippi due to
8 Hurricane Katrina. [AR 467; see AR 579-580, 603-604]. Plaintiff presented a sad, tearful affect, and
9 depressed mood. Dr. Prendergast diagnosed major depressive disorder, recurrent, severe, without psychotic
10 symptoms, and generalized anxiety disorder. She referred plaintiff to a staff psychiatrist, Dr. Singh, who
11 started plaintiff on Paxil. [AR 469, 487].

12    Dr. Payne treated plaintiff at County Behavioral Health from December 2005 through the date of
13 the second hearing in March 2007. [AR 604-605]. Plaintiff testified that she saw Dr. Payne every two
14 weeks for half an hour. [AR 604-605]. During his initial evaluation, Dr. Payne noted plaintiff's symptoms
15 of lack of motivation and energy, wanting to stay in bed, crying easily, fluctuating appetite, insomnia, and
16 passive suicidal ideation with no plans. [AR 487]. On mental status examination, plaintiff was withdrawn.
17 Her speech was soft. Her mood and affect were tearful and anxious. She did not exhibit thought
18 abnormalities, and her insight and judgment were intact. [AR 487, 489].

19    Dr. Payne diagnosed major depression, recurrent, moderate. [AR 487-489]. He increased her Paxil
20 and prescribed a sleep aid. Subsequent progress notes reflect that he adjusted and changed plaintiff's anti-
21 depressant medications in response to reports of side effects and continuing symptoms. [AR 475-488, 560-
22 567]. In May 2006, plaintiff told Dr. Payne that she had not picked up her prescription refills from March
23 2006 and had stopped taking her anti-depressants because she experienced nausea and diarrhea, but that her
24 primary care physician had started her on Effexor, another anti-depressant, in the interim. [AR 482]. She
25 reported depressed mood and memory problems. Dr. Payne adjusted her medications and referred her for
26 individual and or group therapy, but the record does not indicate that she obtained therapy. In October 2006,
27 Dr. Payne added Risperdal, an anti-psychotic, in response to plaintiff's report of auditory hallucinations
28 (hearing her dead mother's voice). [AR 560-561]. In January 2007, he added lithium to plaintiff's regimen

and increased her Risperdal dosage due to persistent auditory hallucinations. [AR 556]. In February 2007, plaintiff's mood was depressed, but her auditory hallucinations had lessened. [AR 554].

Dr. Payne completed a mental RFC assessment form in November 2006, after he had been treating plaintiff for about a year.  He opined that plaintiff had recurrent, severe major depression with psychotic features, and that she was markedly or extremely limited in most work-related mental functional abilities. [AR 432-435]. Dr. Payne stated that plaintiff's mood was not stable and her condition was likely to deteriorate if she was placed under stress in the work place.  He also indicated that her impairment had lasted or was expected to last for twelve months or more. [AR 434].

Dr. Payne's treating source opinion was uncontroverted.  His findings and diagnosis were consistent with those of Dr. Prendergast, the only other doctor who examined plaintiff.  The record contains no other psychiatric treating source evidence and no other medical opinion about plaintiff's mental impairment or mental functional limitations. Under these circumstances, the ALJ was required to provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting Dr. Payne's opinion. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).

The ALJ's reasons were not convincing, especially since the question at step two is not whether plaintiff is disabled, but whether her impairment has more than a slight affect on her work-related functional abilities. The ALJ gave no weight to the fact that Dr. Payne had been seeing plaintiff regularly for depression for more than a year, and that both Dr. Payne's reports and plaintiff's testimony indicated that her symptoms were not fully controlled by medication. Although an ALJ may reject a conclusory opinion that is not supported by clinical findings, Bayliss, 427 F.3d at 1217, the ALJ did not acknowledge that Dr. Payne and Dr. Prendergast documented mental status abnormalities consistent with depression and anxiety. Both doctors also made formal diagnoses of recurrent, severe major depression. See Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989) (per curiam)("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of *the diagnosis and observations of professionals trained in the field of psychopathology.*  The report of a psychiatrist should not be rejected *simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.")* (italics added)(ellipses in original omitted)(quoting Poulin v. Bowen, 817 F.2d 865, 873-874 (D.C. Cir. 1987)); cf. Ukolov v. Barnhart, 420 F.3d 1002, 1006

(9th Cir.2005)(affirming a finding of no disability at step two where the claimant's treating physician "admitted that no 'precise etiologic diagnosis' had been made," and "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results").

The ALJ also rejected Dr. Payne's opinion because he concluded that plaintiff's condition had improved in response to medication, but Dr. Payne's reports and plaintiff's testimony established that her symptoms fluctuated and were not fully controlled by medication. Symptoms that vary in intensity do not rule out a finding of severity or even disability. See 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00D (stating that an individual's "level of functioning may vary considerably over time.... Proper evaluation of [a mental impairment] must take into account any variations in the level of ... functioning in arriving at a determination of impairment severity over time"); see also Lebus v. Harris, 526 F.Supp. 56, 61 (N.D. Cal. 1981) (explaining that symptom-free intervals do not compel a finding of nondisability arising from a mental impairment because "it is extremely difficult to predict the course of mental illness").

The ALJ's sweeping dismissal of Dr. Payne's opinion as "egregiously accommodative," "grossly exaggerated," and "typical" of similar "hyperbolic" reports from County Behavioral Health providers is not based on substantial evidence in the record and is not a convincing or legitimate reason for giving no weight to a treating source's findings and opinion. See Nguyen v. Chater, 100 F.3d 1462, 1464-1465 (9th Cir. 1996) (clarifying that the source of a medical report is a factor that justifies rejection only if there is evidence of actual impropriety or no medical basis for opinion); see Reddick v. Chater, 157 F.3d at 715, 725-726 (9th Cir. 1998) (holding that the ALJ erred in assuming that the treating physician's opinion was less credible because his job was to be supportive of the patient). "If the ALJ thought he needed to know the basis of [the treating physician's uncontroverted opinion] in order to evaluate [it], he had a duty to conduct an appropriate inquiry" to ascertain the basis for that opinion. Smolen, 80 F.3d at 1288 (citing 42 U.S.C. § 405(d), 20 C.F.R. §§ 404.950(d), 404.944, 404.1527(c)(3)).

The severity inquiry is "a de minimis screening device to dispose of groundless claims." Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1290). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments *only when his conclusion is 'clearly established by medical evidence.'*" Webb, 433 F.3d at 687 (emphasis added)(quoting Smolen, 80 F.3d at 1290, and SSR 85-28). The medical evidence in this case does not "clearly establish"

that plaintiff did not have a severe medically determinable mental impairment meeting the twelve-month duration requirement. In so finding, the ALJ "appears to have applied a more stringent legal standard than is warranted by law." Edlund, 253 at 1158-1159 (holding that the ALJ erred in finding no severe impairment where she "selectively focused on aspects of" the examining psychologist's report that "tend[ed] to suggest non-disability" and "discard[ed] the entirety of" that report without providing clear and convincing reasons).

For all of these reasons, the ALJ's finding that plaintiff did not have a severe, medically determinable mental impairment, alone or in combination with her physical impairments, is not based on substantial evidence in the record and reflects application of an improper legal standard.

**Choice of remedy**

In general, the choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or for payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

For purposes of applying the Harman test, the court has discretion not to require the "crediting as

true" of evidence rejected for insufficient reasons. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003); see Bunnell v. Barnhart, 336 F.3d 1112, 1115-1116 (9th Cir. 2003)(applying the Harman remand test to hold that while the ALJ did not properly reject the opinions of the treating physicians or the claimant's subjective complaints and lay witness testimony, several "outstanding issues" remain to be resolved, including "if she is disabled, the timing and duration of her disability," whether the ALJ "must credit her testimony as true,"and whether, according to a vocational expert, there was alternative work the claimant could perform with all of the limitations supported by the record).

There are outstanding issues because the ALJ did not reach the remaining steps in the sequential evaluation procedure. Accordingly, the appropriate remedy is a remand for further administrative proceedings and a new hearing decision. See Webb, 433 F.3d at 688 (remanding for further administrative proceedings where "the ALJ should have continued the sequential analysis beyond step two because there was not substantial evidence to show that [the disability] claim was 'groundless'"). On remand, this case should be assigned to a different ALJ. Cf. Reed v. Massanari, 270 F.3d 838, 840, 844-845 (9th Cir. 2001) (reversing and remanding to a different ALJ where the first ALJ denied the claimant's request for a consultative examination with a specialist based on his belief that the available consultative specialists routinely issued unreliable disability opinions, and observing that the ALJ's "ad hoc, across-the-board disqualification" of those consultative physicians not only was improper but also indicated that the ALJ would "not be able to assess fairly" the opinions of the available consultative physicians on remand).

**Conclusion**

For the reasons stated above, the Commissioner's decision is **reversed,** and this case is **remanded for further administrative proceedings** consistent with this memorandum of decision.

DATED: May 9, 2008

                         /s/
                        ANDREW J. WISTRICH
                        United States Magistrate Judge

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| **SHIRLEY M. SMITH,**<br><br>        **Plaintiff,**<br><br>        **v.**<br><br>**MICHAEL J. ASTRUE,**<br>**Commissioner of the Social**<br>**Security Administration,**<br><br>        **Defendant.** | **Case No. EDCV 07-01129 AJW**<br><br>**[PROPOSED] J U D G M E N T** |

**IT IS ADJUDGED** that the Commissioner's decision is reversed, and this case is remanded for further administrative proceedings consistent with the memorandum of decision filed concurrently herewith.

DATED: _____, 2008

_____
ANDREW J. WISTRICH
United States Magistrate Judge